IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

JEROME HENDERSON,

      Petitioner,

    v.                                  Case No. 1:12-cv-703
                                        Judge Gregory L. Frost
WARDEN, Chillicothe,              Magistrate Judge Elizabeth P. Deavers
      Correctional Institution,

      Respondent.

**OPINION AND ORDER**

      Petitioner, a prisoner sentenced to death by the State of Ohio, has pending before this Court a second-in-time habeas corpus action pursuant to 28 U.S.C. § 2241 and 2254.  This matter is before the Court for consideration of the amended petition (ECF No. 13) filed by Petitioner, Jerome Henderson, and the return of writ (ECF No. 14) filed by Respondent, the warden of the Chillicothe Correctional Institution.  Also before the Court is a motion for leave to file a second amended and supplemental petition (ECF No. 19) filed by Petitioner, a memorandum in opposition (ECF No. 20) filed by Respondent, and a reply memorandum (ECF No. 21) filed by Petitioner.

      The operative petition consists of previously pleaded method-of-execution claims that target an execution protocol that has been superseded (ECF No. 13, at Page ID # 241-315), while the motion for leave to file a second amended petition seeks to update and supplement the now-stale method-of-execution claims (ECF No. 19).  When Petitioner filed his original second-in-time petition, his method-of-execution challenges consisted of one "cruel and unusual punishment" claim and one "equal protection" claim spanning a total of seven pages.  (ECF No.

1

2.)  Petitioner's method-of-execution challenges have since metastasized into 10 claims spanning 103 pages.  (ECF No. 19-1, at Page ID # 417-519.)  Although that metamorphosis is troubling, the fact of the matter is that the United States Supreme Court's June 29, 2015 in *Glossip v. Gross*, 135 S. Ct. 2726, 2738 (2015), renders all of the foregoing claims irrelevant in the habeas context.

The procedural history concerning Petitioner's method-of-execution claims is as follows.  On September 18, 2012, Petitioner filed a Petition raising two grounds challenging the constitutionality of Ohio's execution policy, procedures, and practices.  (ECF No. 2.)  Specifically, Petitioner asserted:

> **First Ground for Relief:**  Henderson's execution will violate the Eighth and Fourteenth Amendments because Ohio's lethal injection policy, protocols and procedures will result in cruel and unusual punishment and will deny him other constitutional rights.
>
> **Second Ground for Relief:**  Henderson's execution will violate the Fourteenth Amendment because Ohio's lethal injection policy, protocols, and procedures will deprive him of equal protection of the law and other constitutional rights.

(ECF No. 2, at Page ID # 13-19.)

On November 14, 2014, this Court issued an Order giving Petitioner until April 13, 2015, to file any motion for leave to amend his Petition.  (ECF No. 9.)  The Court reasoned that Ohio's issuance of a new protocol necessitated that Petitioner update his method-of-execution claims to target that new protocol.  (*Id*. at Page ID # 206-07.)

On April 13, 2015, Petitioner filed his Amended Petition, replacing his two original method-of-execution claims with ten new method-of-execution claims.  (ECF No. 13.)  Specifically, after setting forth an extensive factual background, Petitioner raised the following claims for relief:

2

**First Ground for Relief:**  Henderson's execution by lethal injection under Ohio law will violate the Supremacy Clause.

**Second Ground for Relief:**  Henderson's execution by lethal injection under Ohio law will violate the Eighth Amendment because any drug DRC can procure for use in lethal injections has a substantial, objectively intolerable risk of causing unnecessary, severe pain, suffering, degradation, humiliation, and/or disgrace.

**Third Ground for Relief:**  Henderson's execution by lethal injection under Ohio law will violate the Eighth Amendment because it causes a lingering death.

**Fourth Ground for Relief:**  Henderson's execution by lethal injection under Ohio law will violate the Eighth Amendment because lack of legally available, effective drugs to conduct lethal-injection executions will result in the arbitrary and capricious imposition of the death penalty.

**Fifth Ground for Relief:**  Henderson's execution by lethal injection under Ohio law will be a human experiment on a nonconsenting prisoner in violation of the Fourteenth Amendment.

**Sixth Ground for Relief:**  Henderson's execution by lethal injection under Ohio law will violate the Eighth Amendment because the lack of legally obtainable, effective drugs to conduct lethal-injection executions will cause psychological torture, pain and suffering.

**Seventh Ground for Relief:**  Henderson's execution by lethal injection under Ohio law will violate the Eighth Amendment because of the substantial, objectively intolerable risk of serious harm due to DRC's maladministration of Ohio's execution protocol.

**Eighth Ground for Relief:**  Henderson's execution by lethal injection under Ohio law will violate the Equal Protection Clause of the Fourteenth Amendment.

**Ninth Ground for Relief:**  Henderson's execution by lethal injection under Ohio law will violate the Due Process Clause of the Fourteenth Amendment.

**Tenth Ground for Relief:**  Henderson's execution by lethal injection under Ohio law will violate the Eighth Amendment because of his unique, individual physical and/or mental characteristics.

(ECF No. 13, at Page ID # 279-315.)

On July 17, 2015, this Court issued an Order giving Petitioner until August 14, 2015, to

file a motion for leave to amend his method-of-execution claims, accompanied by a complete proposed amended petition. "In the memorandum in support," this Court stated, "Petitioner must address the impact of *Glossip* on the Sixth Circuit precedent upon which this Court has continually relied for authority to allow method-of-execution claims to be litigated in habeas corpus: specifically, *Adams v. Bradshaw*, 644 F.3d 481 (6th Cir. 2011)." (ECF No. 18, at Page ID # 377.)

Presently before this Court is Petitioner's August 14, 2015 motion for leave to file a second amended and supplemental petition proposing to raise ten grounds. (ECF No. 19; ECF No. 19-1, at Page ID # 417-519.) Petitioner presents an extensive factual background and seeks to raise the following grounds for relief:

> **First Ground for Relief**:  Henderson's sentence of execution by lethal-injection under Ohio law is an invalid sentence and thus unconstitutional because Ohio's execution laws are preempted by federal law in accordance with the Supremacy Clause.
>
> **Second Ground for Relief**:  Henderson's execution by lethal-injection under Ohio law will violate the Eighth Amendment because any drug DRC can procure for use in lethal injections has a substantial, objectively intolerable risk of causing unnecessary, severe pain, suffering, degradation, humiliation, and/or disgrace.
>
> **Third Ground for Relief**:  Henderson's execution by lethal-injection under Ohio law will violate the Eighth Amendment because it causes a lingering and/or undignified death and other Eighth Amendment violations.
>
> **Fourth Ground for Relief**:  Henderson's execution by lethal-injection under Ohio law will violate the Eighth Amendment because lack of legally available, effective drugs to conduct lethal-injection executions will result in the arbitrary and capricious imposition of the death penalty.
>
> **Fifth Ground for Relief**:  Henderson's execution by lethal-injection under Ohio law will be a human experiment on a non-consenting prisoner in violation of the Fourteenth Amendment.
>
> **Sixth Ground for Relief**:  Henderson's execution by lethal-injection under Ohio

>law will violate the Eighth Amendment because the lack of legally obtainable, effective drugs to conduct lethal-injection executions will cause psychological torture, pain and suffering.
>
>**Seventh Ground for Relief**:  Henderson's execution by lethal-injection under Ohio law will violate the Eighth Amendment because of the substantial, objectively intolerable risk of serious harm due to DRC's maladministration of Ohio's execution protocol.
>
>**Eighth Ground for Relief**:  Henderson's execution by lethal-injection under Ohio law will violate the Equal Protection Clause of the Fourteenth Amendment.
>
>**Ninth Ground for Relief**:  Henderson's execution by lethal-injection under Ohio law will violate the Due Process Clause of the Fourteenth Amendment.
>
>**Tenth Ground for Relief**:  Henderson's execution by lethal-injection under Ohio law will violate the Eighth Amendment because of his unique, individual physical and/or mental characteristics.

(ECF No. 19-1, at Page ID # 473-519.)

The Supreme Court's decision in *Glossip* involved a § 1983 challenge by Oklahoma death row inmates alleging "that midazolam, the first drug employed in the State's current three-drug protocol, fails to render a person insensate to pain." 135 S. Ct. at 2731.  The district court conducted an evidentiary hearing on four prisoners' application for a preliminary injection to stay their executions.  After the district court denied the requested preliminary injunctions, the Court of Appeals for the Tenth Circuit affirmed that decision and "accepted the District Court's finding of fact regarding midazolam's efficacy." *Id*.  The Supreme Court affirmed and explained its decision as follows:

>For two independent reasons, we also affirm.  First, the prisoners failed to identify a known and available alternative method of execution that entails a lesser risk of pain, a requirement of all Eighth Amendment method-of-execution claims.  See *Baze v. Rees*, 553 U.S. 35, 61, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008) (plurality opinion).  Second, the District Court did not commit clear error when it found that the prisoners failed to establish that Oklahoma's use of a massive dose of midazolam in its execution protocol entails a substantial risk of severe pain.

5

*Glossip*, 135 S. Ct. at 2731.

In explaining why the requirement to identify an alternative method of execution does not contravene the Court's pre-*Baze* decision in *Hill v. McDonough*, 547 U.S. 573 (2006), the Supreme Court stated as follows:

> The portion of the opinion in *Hill* on which [the petitioners] rely concerned a question of civil procedure, not a substantive Eighth Amendment question. In *Hill*, the issue was whether a challenge to a method of execution must be brought by means of an application for a writ of habeas corpus or a civil action under § 1983. *Id*., at 576, 126 S.Ct. 2096. ***We held that a method-of-execution claim must be brought under § 1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence.***

*Glossip*, 135 S. Ct. at 2738 (emphasis added).

This statement regarding *Hill* is significant. In *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011), the Sixth Circuit held that method-of-execution challenges are cognizable in habeas corpus. This Court and other courts within this District have since relied on *Adams* in accepting the proposition that method-of-execution claims properly sound in habeas corpus. *Glossip* now undeniably upends that practice. In its July 23, 2015 Order, this Court directed Petitioner to "address the impact of *Glossip* on the Sixth Circuit precedent upon which this Court has continually relied for authority to allow method-of-execution claims to be litigated in habeas corpus: specifically, *Adams v. Bradshaw*, 644 F.3d 481 (6th Cir. 2011)." (ECF No. 18, at Page ID # 377.)

Petitioner's take on *Glossip* fails to persuade.[1] Petitioner first asserts that the sentence at

---

[1] Petitioner includes in his amended petition (ECF No. 13) and proposed second amended and supplemental petition (ECF No. 19-1) arguments for why his second-in-time petition is not a second or successive petition in violation of 28 U.S.C. § 2244(b). Although this Court has previously resolved that issue in other cases, for the reasons set forth in this decision,

6

issue in *Glossip* "is mere dictum" because the question of whether Glossip's claims could be litigated in § 1983 or in habeas corpus was not before the Court. (*Id*. at Page ID # 384.) Petitioner further argues that "[t]he fact that this sentence is dictum is confirmed by the fact that *Glossip*'s discussion of *Hill* misstated *Hill*'s holding." (*Id*. at Page ID # 384.)

The Court disagrees. It is well settled that "[w]hen an opinion issues for the [Supreme] Court, it is not only the result but also those portions of the opinion necessary to that result by which [courts] are bound." *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 67 (1996). This matters because *Glossip*'s petitioners had argued that requiring them to identify an alternative method of execution contravened *Hill*, which involved the need for the majority in *Glossip* to address the meaning of *Hill*. The majority's discussion of the holding in *Hill* was therefore a necessary part of its explanation as to why the petitioners had a burden to plead a known and available alternative method of execution. Because the issue was central to the Supreme Court's holding in *Glossip*, it was not dictum.

But even if the sentence at issue were indeed technically dictum, it carries with it an important part of the majority's rationale for the result the majority reaches and is thus entitled to greater weight than a stray aside tagged onto a decision. *See Seminole Tribe of Florida*, 517 U.S. at 67 (quoting *Sheet Metal Workers v. EEOC*, 478 U.S. 421, 490 (1986)). The unavoidable fact is that a majority of the Supreme Court has now stated in unmistakable language that "[w]e held [in *Hill*] that a method-of-execution claim must be brought under § 1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence." *Glossip*, 135 S. Ct. at 2738. Justice Kennedy, the author of *Hill*, in fact joined the majority in *Glossip* without writing

---

the Court need not discuss that issue here.

7

separately to dispute that characterization of the former case. In light of these circumstances, it is not for this Court or any other lower court to say *Hill* means otherwise than what *Glossip* said it means. Regardless of how this Court or other courts read *Hill* in the past, it is the obligation of the lower courts to comply with the teachings of a Supreme Court majority.

Petitioner attempts to remove his claims from the reach of *Glossip*'s recognition of the contextual limits of habeas by repeatedly stating that his method-of-execution claims *do* challenge the validity of his underlying sentence of death. (ECF Nos. 110 & 112.) But saying something does not necessarily make it so. The label that Petitioner assigns to his proposed method-of-execution claims does not change their substantive nature. The qualifying language that Petitioner inserts does not transform claims that attack a method or practice for carrying out a sentence (or, in the language of *Hill*, the *circumstances* of the sentence) into claims that invalidate that sentence. And the failure by Petitioner to concede an alternative method of execution does not change the fact that these claims, as pleaded, are method-of-execution challenges that target *how* Ohio intends to execute him, not *whether* Ohio can execute him. Those challenges, if successful, simply would not undermine the validity of death sentence itself.

Magistrate Judge Michael Merz recently pointed out in rejecting a similar argument that although the habeas petitioner therein "claimed" as to each method-of-execution claim that a finding in his favor would invalidate his death sentence, "[w]hen the assertions behind these conclusions are read, however, it is not clear that the required distinction between habeas and § 1983 is maintained." *Turner v. Hudson*, No. 2:07-cv-595, 2015 WL 5251233, at *6 (S.D. Ohio Sept. 9, 2015). This Court agrees.

Petitioner nonetheless reasons that his method-of-execution challenges necessarily target

8

the underlying validity of his death sentence because, if successful, "the State would be left with no other way to execute Henderson if enjoined from executing him using any lethal-injection protocol, therefore making his death sentence impossible to carry out under Ohio law." (ECF No. 19, at Page ID # 388.) But this reasoning contravenes both logic and the law. Ohio law insulates otherwise valid death sentences from being rendered invalid by Ohio's inability to execute the death penalty by a particular method. Subsection (C) of Ohio Revised Code § 2949.22 provides in relevant part:

> If a person is sentenced to death, and if the execution of a death sentence by lethal injection has been determined to be unconstitutional, the death sentence shall be executed by using any different manner of execution prescribed by law subsequent to the effective date of this amendment instead of by causing the application to the person of a lethal injection of a drug or combination of drugs of sufficient dosage to quickly and painlessly case death, provided that the subsequently prescribed different manner of execution has not been determined to be unconstitutional.

Ohio Rev. Code Ann. § 2949.22(C). Petitioner argues that "[h]is challenge, if successful in obtaining a permanent injunction against Ohio trying to execute him via lethal injection, would necessarily imply the unlawfulness of his death sentence, because Ohio law provides for no method of execution other than lethal-injection, leaving the State no legal way to kill him." (ECF No. 19, at Page ID # 402.) That is not so. Although Ohio law *currently* provides for no method of execution other than lethal-injection, Ohio law also provides for the state legislature to enact a "different manner of execution[ ]" in the event that a lethal injection protocol is determined to be unconstitutional. Such an approach tracks the *Glossip* majority's recognition that because capital punishment is constitutional, there is a constitutional method of carrying it out. In discussing the possibility of states returning to abandoned methods of execution if no drug or drugs can be used in an execution, the majority explained:

9

> If States cannot return to any of the "more primitive" methods used in the past and if no drug that meets with the principal dissent's approval is available for use in carrying out a death sentence, the logical conclusion is clear. But we have time and again reaffirmed that capital punishment is not *per se* unconstitutional. *See, e.g., Baze*, 553 U.S., at 47, 128 S.Ct. 1520; *id*., at 87-88, 128 S.Ct. 1520 (SCALIA, J., concurring in the judgment); *Gregg*, 428 U.S., at 187, 96 S.Ct. 2909 (joint opinion of Stewart, Powell, and Stevens, JJ.); *id*., at 226, 96 S.Ct. 2909 (White, J., concurring in the judgment); *Resweber*, 329 U.S., at 464, 67 S.Ct. 374; *In re Kemmler*, 136 U.S., at 447, 10 S.Ct. 930; *Wilkerson*, 99 U.S., at 134-135. We decline to effectively overrule these decisions.

*Glossip*, 135 S. Ct. at 2739. In other words, because capital punishment is constitutional, Petitioner must be wrong when he says that if Ohio cannot execute him by a specific drug or drugs, then his death sentence is invalid. Other drugs and other execution methods exist. Absent such a possibility of an invalid death sentence, Petitioner's asserted and proposed claims cannot be said to sound in habeas.

Despite the foregoing, Petitioner argues that the holding of *Glossip* "expressly contemplates the remaining viability of habeas to raise lethal-injection challenges." (ECF No. 19, at Page ID # 397.) To support this contention, Petitioner directs this Court to that portion of the majority opinion that responds directly to the dissent of Justice Sotomayor and her discussion of whether the majority had converted all Eighth Amendment challenges into conditional challenges requiring a comparative analysis between a challenged execution method and an inmate-proffered alternative method. Petitioner asserts that "[t]he majority rejected Justice Sotomayor's allegation that it was converting all Eighth Amendment claims into conditional claims, declaring the allegations 'simply not true.' By so declaring, the majority clarified that unconditional Eighth Amendment challenges seeking a categorical prohibition on a State's execution protocols or procedures remains viable." (*Id*. at Page ID # 399 (internal citation omitted).)

10

It is curious that while arguing that this Court should not read too much into the *Glossip* majority's characterization of *Hill*, Petitioner concurrently asks this Court to read so much into what that majority meant when it said "simply not true." The context in which that statement was made undercuts assigning it the meaning and weight Petitioner suggests. The *Glossip* majority stated:

> Finally, we find it appropriate to respond to the principal dissent's groundless suggestion that our decision is tantamount to allowing prisoners to be "drawn and quartered, slowly tortured to death, or actually burned at the stake." That is simply not true, and the principal dissent's resort to this outlandish rhetoric reveals the weakness of its legal arguments.

*Glossip*, 135 S. Ct. at 2746 (citation omitted). Given the brevity and arguable inherent ambiguity of the majority's two-sentence rebuttal, this Court does not think that the majority intended to capture the entire conditional/unconditional challenge debate in and then resolve the point about habeas law that Petitioner imputes to this passage. The passage reads more as a call for restraint in construing the majority's holding or intent than as implicit acceptance of the possibility of habeas relief for execution challenges. When it comes to that possibility, the majority is much more direct: "a method-of-execution claim must be brought under § 1983 because such a claim does not attack the validity of the prisoner's conviction or death sentence." *Id*. at 2738. The majority did not qualify that statement by stating *some* method-of-execution claims. Absent such a limitation, the majority's notably unqualified characterization of *Hill* stands as an express conclusion regarding the availability of habeas relief for *all* such challenges as opposed to the inference-upon-inference "statement" Petitioner would have this Court impute to the majority.

For the foregoing reasons, this Court concludes that none of the method-of-execution claims Petitioner asserts in his Amended Petition and none of the claims he proposes to add are

11

cognizable in habeas corpus.  Accordingly, the Court **DENIES** as not cognizable the claims that Petitioner raised in his Amended Petition (ECF No. 13) and **DENIES** Petitioner's motion for leave to file a second amended petition (ECF No. 19).  The Clerk shall enter judgment accordingly and terminate this action on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

    **IT IS SO ORDERED.**

       /s/ Gregory L. Frost
GREGORY L. FROST
UNITED STATES DISTRICT JUDGE